UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF NORTH CAROLINA

No. 11-cv-1068

| | | |
|---|---|---|
| PLYMOUTH COUNTY RETIREMENT ASSOCIATION, on Behalf of Itself and All Others Similarly Situated, | ) ) ) ) | CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS |
| Plaintiff(s), | ) ) | DEMAND FOR JURY TRIAL |
| vs. | ) ) | |
| PRIMO WATER CORPORATION, BILLY D. PRIM, MARK CASTANEDA, DAVID J. MILLS, RICHARD A. BRENNER, DAVID W. DUPREE, MALCOLM McQUILKIN, DAVID L. WARNOCK, JACK C. KILGORE, CULLIGAN INTERNATIONAL COMPANY, ANDREW J. FILIPOWSKI, CARL V. SANTOIEMMO, STIFEL, NICOLAUS & COMPANY, INC., BB&T CAPITAL MARKETS, JANNEY MONTGOMERY SCOTT LLC, and SIGNAL HILL CAPITAL GROUP LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

Plaintiff makes the following allegations, except as to allegations specifically pertaining to Plaintiff and Plaintiff's counsel, based upon the investigation undertaken by Plaintiff's counsel, which included analysis of publicly available news articles and reports, public filings, securities analysts' reports and advisories about Primo Water Corporation ("Primo Water" or the "Company"), press releases and other public statements issued by the Company, and media reports about the Company, and believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons or entities, other than Defendants, who acquired the common stock of Primo Water in or traceable to the Company's initial public offering on or about November 4, 2010 (the "IPO") and the Company's offering of common stock on or about June 17, 2011 (the "June 2011 Offering") (collectively, the "Offerings"), as well as purchasers of the Company's common stock between November 4, 2010 and August 10, 2011, inclusive (the "Class Period"), under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 ("Securities Act") and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 11, 12(a)(2) and 15 of the Securities Act [15 U.S.C. §§77k, 77l(a)(2) and 77o], Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder [17 C.F.R. §240.10b-5].

3. This Court has jurisdiction over this action pursuant to Section 22 of the Securities Act [15 U.S.C. §77v], Section 27 of the Exchange Act [15 U.S.C. §78aa], and 28 U.S.C. §§1331 and 1337.

4. Venue is properly laid in this District pursuant to Section 22 of the Securities Act, Section 27 of the Exchange Act and 28 U.S.C. §1391(b) and (c). The acts and conduct complained of herein occurred in substantial part in this District and the Company's executive offices are located in this District.

5. In connection with the acts and conduct alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the mails and telephonic communications and the facilities of the national securities markets.

## PARTIES

6. Plaintiff Plymouth County Retirement Association acquired the common stock of Primo Water as set forth in the certification attached hereto and incorporated by reference herein pursuant or traceable to the Offerings and was damaged thereby.

7. Defendant Primo Water (Ticker Symbol "PRMW") provides multi-gallon purified bottled water, self-serve filtered drinking water, and water dispensers in the United States and Canada. It operates in three segments: Primo Bottled Water Exchange, Primo Refill, and Primo Products.

(a) Defendant Billy D. Prim ("Prim") is the founder, Chairman of the Board of Directors (the "Board") and Chief Executive Officer ("CEO") of Primo Water. Defendant Prim signed or authorized the signing of the IPO Registration Statement (defined below) and the June 2011 Offering Registration Statement (defined below).

- 2 -

(b)     Defendant Mark Castaneda ("Castaneda) has served as Chief Financial Officer, Secretary and Assistant Treasurer of the Company since March 2008. Defendant Castaneda signed or authorized the signing of the IPO Registration Statement and the June 2011 Offering Registration Statement.

(c)     Defendant David J. Mills ("Mills") served as Secretary and Treasurer of the Company at relevant times herein. Defendant Mills signed or authorized the signing of the IPO Registration Statement and the June 2011 Offering Registration Statement.

(d)     Defendant Richard A. Brenner ("Brenner") served as a member of the Board at relevant times herein. Defendant Brenner signed or authorized the signing of the IPO Registration Statement and the June 2011 Offering Registration Statement.

(e)     Defendant David W. Dupree ("Dupree") served as a member of the Board until on or about May 18, 2011. Defendant Dupree signed or authorized the signing of the IPO Registration Statement.

(f)     Defendant Malcolm McQuilkin ("McQuilkin") served as a member of the Board at relevant times herein. Defendant McQuilkin signed or authorized the signing of the IPO Registration Statement and the June 2011 Offering Registration Statement.

(g)     Defendant David L. Warnock ("Warnock") served as a member of the Board at relevant times herein. Defendant Warnock signed or authorized the signing of the IPO Registration Statement and the June 2011 Offering Registration Statement.

(h)     Defendant Jack C. Kilgore ("Kilgore") served as a member of the Board since on or about May 18, 2011. Defendant Kilgore signed or authorized the signing of the June 2011 Offering Registration Statement.

Case 1:11-cv-01068-TDS-LPA   Document 1   Filed 12/02/11   Page 4 of 29

8.      Defendants Prim, Castaneda, Mills, Brenner, Dupree, McQuilkin, Warnock, and Kilgore are referred to herein as the "Primo Water Individual Defendants."

9.      Defendant Culligan International Company ("Culligan") sold almost 2.9 million shares in the June 2011 Offering.

10.     Defendant Andrew J. Filipowski ("Filipowski") served as a member of the Board prior to the IPO. Defendant Filipowski sold more than 124,000 shares of common stock in the June 2011 Offering.

11.     Defendant Carl V. Santoiemmo ("Santoiemmo") served as a member of Omnifrio Beverage Company, LLC ("Omnifrio") and acquired his shares in the Company in a *pro rata* distribution from Omnifrio in May 2011. Omnifrio acquired its shares on or about April 11, 2011 in connection with the Company's purchase of Omnifrio's single-serve beverage business. Defendant Santoiemmo sold more than 122,000 shares of common stock in the June 2011 Offering.

12.     Defendants Culligan, Filipowski, and Santoiemmo are referred to herein as the "Selling Shareholder Defendants."

13.     Defendant Stifel, Nicolaus & Company, Inc. ("Stifel Nicolaus") operates as an investment bank in the United States with executive offices located in San Francisco, CA. Stifel Nicolaus acted as an underwriter and sole-book running manager and representative for the Offerings and helped to draft and disseminate the Prospectuses for the Offerings.

14.     Defendant BB&T Capital Markets ("BB&T") operates as an investment bank in the United States with executive offices located in Richmond, VA. Defendant BB&T served as an underwriter for the Offerings.

- 4 -

15.     Defendant Janney Montgomery Scott LLC ("Janney") operates as an investment bank in the United States with executive offices located in Philadelphia, PA. Defendant Janney served as an underwriter for the Offerings.

16.     Defendant Signal Hill Capital Group LLC ("Signal Hill") operates as an investment bank in the United States with executive offices located in Baltimore, MD. Defendant Signal Hill served as an underwriter for the Offerings.

17.     Defendants Stifel Nicolaus, BB&T, Janney, and Signal Hill are referred to herein as the "Underwriter Defendants." The Underwriter Defendants drafted and disseminated the IPO and were paid over $8 million, and were paid over $2 million in gross fees in connection with the June 2011 Offering. The Underwriter Defendants failed to perform adequate due diligence in connection with their roles as underwriters for the Offerings and were negligent in failing to ensure that the Registration Statements and Prospectuses for the Offerings were prepared properly and accurately. The Underwriter Defendants' failure to conduct an adequate due diligence investigation was a substantial factor leading to the harm complained of herein.

## CLASS ACTION ALLEGATIONS

18.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of a class consisting of all persons or entities who acquired the common stock of Primo Water in or traceable to the Company's IPO on or about November 4, 2010 and the Company's offering of common stock in the June 2011 Offering, as well as purchasers of the Company's common stock between November 4, 2010 and August 10, 2011, inclusive (the "Class"). Excluded from the Class are Defendants herein, members of the immediate families of each of the Defendants, any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest or which is related to or affiliated with any

- 5 -

Defendant, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party.

19.    The members of the Class are so numerous that joinder of all members is impracticable.  Primo Water's common stock is actively traded on the NASDAQ.  Primo Water sold more than 9.5 million shares in the IPO and 6.9 million shares in the June 2011 Offering.  The precise number of Class members is unknown to Plaintiff at this time but is believed to be in the thousands.  In addition, the names and addresses of the Class members can be ascertained from the books and records of Primo Water or its transfer agent or the underwriters to the Offerings.  Notice can be provided to such record owners by a combination of published notice and first-class mail, using techniques and a form of notice similar to those customarily used in class actions arising under the federal securities laws.

20.    Plaintiff will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiff has retained competent counsel experienced in class action litigation under the federal securities laws to further ensure such protection and intends to prosecute this action vigorously.

21.    Plaintiff's claims are typical of the claims of the other members of the Class because Plaintiff's and all the Class members' damages arise from and were caused by the same false and misleading representations and omissions made by or chargeable to Defendants.  Plaintiff does not have any interests antagonistic to, or in conflict with, the Class.

22.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged.  Plaintiff knows of no difficulty that

will be encountered in the management of this litigation that would preclude its maintenance as a Class action.

23.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     Whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     Whether the Prospectuses and Registration Statements issued by Defendants to the investing public in connection with the Offerings negligently omitted and/or misrepresented material facts about Primo Water and its business; and

(c)     The extent of injuries sustained by members of the Class and the appropriate measure of damages.

## SUBSTANTIVE ALLEGATIONS

### Primo Water and the Offerings

24.     Primo Water, together with its subsidiaries, provides multi-gallon purified bottled water, self-serve filtered drinking water, and water dispensers in the United States and Canada.  It operates in three segments: Primo Bottled Water Exchange, Primo Refill, and Primo Products.  The Primo Bottled Water Exchange segment sells three- and five-gallon purified bottled water through retailers in the United States.  The Primo Refill segment provides a self-serve filtered drinking water service through retailers in the United States and Canada.  The Primo Products segment sells water dispensers that are designed to dispense Primo Water and other dispenser-compatible bottled water. The Company services the exchange and refill retail locations through its network of primarily independent bottlers and distributors.

- 7 -

25.     On or about March 12, 2010, Primo Water filed a Form S-1 Registration Statement with the Securities and Exchange Commission ("SEC") and filed nine amendments to the Registration Statement on Form S-1/A thereafter for the IPO (the "IPO Registration Statement").

26.     On or about November 4, 2010, the Prospectus with respect to the IPO (the "IPO Prospectus"), which forms part of the IPO Registration Statement, became effective and 8.33 million shares of common stock of Primo Water were sold to the public at $12 per share, thereby raising $99.96 million.

27.     In addition to the above-referenced 8.33 million shares, the IPO included an overallotment option granted to the Underwriter Defendants to purchase up to an additional 1.25 million shares of common stock and, on November 18, 2010, the Underwriter Defendants exercised this option for an additional $15 million. In total, 9.58 million shares were sold in the IPO at $12 per share, thereby raising approximately $114.96 million.

28.     Simultaneously with the closing of the IPO, the Company acquired certain assets of Culligan Store Solutions, LLC and Culligan of Canada, Ltd. related to its business of providing reverse osmosis water filtration systems that generate filtered water for refill vending machines and store-use water services (the "Culligan Refill Business"). This business also sells empty reusable water bottles for use at refill vending machines. The Company funded the $105 million purchase price for the Culligan Refill Business with a portion of the proceeds from the IPO, along with new debt under a senior revolving credit facility.

29.     On or about April 15, 2011, Primo Water filed a Form S-1 Registration Statement with the SEC and filed four amendments to the Registration Statement on Form S-1/A thereafter for the June 2011 Offering (the "June 2011 Offering Registration Statement").

- 8 -

30.    On or about June 16, 2011 at 4:00 p.m., the Prospectus with respect to the June 2011 Offering (the "June 2011 Offering Prospectus"), which forms part of the June 2011 Offering Registration Statement, became effective and 6.9 million shares of common stock of Primo Water were sold to the public at $11.26 per share, thereby raising $77.69 million. The Company sold 3,751,313 shares and the Selling Shareholder Defendants sold 3,148,687 shares.

31.    In addition to the above-referenced 6.9 million shares, the June 2011 Offering included an overallotment option granted to the Underwriter Defendants to purchase up to an additional 900,000 shares of common stock from the Company, and Culligan and the Underwriter Defendants fully exercised this option on June 22, 2011. In total, 7.8 million shares were sold in the June 2011 Offering at $11.26 per share, thereby raising approximately $87.83 million.

32.    Culligan sold 100% of its shares in the Company in the June 2011 Offering.

**Defendants' Materially False and Misleading Statements, Inaccurate Statements of Material Fact and Material Omissions During the Class Period**

33.    The Class Period begins on November 4, 2010, the date of Primo Water's IPO. The IPO Registration Statement discussed the Company's business and strong relationship with large retail customers, and stated, in pertinent part, as follows:

> We are a rapidly growing provider of three- and five-gallon purified bottled water and water dispensers sold through major retailers nationwide. . . . As of June 30, 2010, our water bottle exchange service and water dispensers were offered in each of the contiguous United States and located in approximately 7,200 and 5,500 retail locations respectively, including Lowe's Home Improvement, Sam's Club, Costco, Walmart, Target, Kroger, Albertsons and Walgreens.
>
> We have created a new nationwide single-vendor water bottle exchange solution for our retail customers, addressing a market demand that we believe was previously unmet. Our water bottle exchange solution is easy for retailers to implement, requires minimal management supervision and store-based labor and provides centralized billing and detailed performance reports. Our solution offers retailers attractive financial margins and the ability to optimize typically unused retail space with our displays.

- 9 -

*    *    *

We focus our capital expenditures on developing new retail relationships, installing displays at store locations, raising brand awareness, research and development for new products and maintaining our MIS tools. We are able to manage our national network on a real-time basis through our MIS tools, which provide resource planning and delivery schedule tracking, thus enabling us to optimize our network's assets and respond to customer needs.

34.    The IPO Registration Statement discussed the fact that Defendants did not believe that Primo Water had any meaningful single-vendor competitors and stated, in pertinent part, as follows:

We are the only water bottle exchange provider with a single-vendor solution for retailers nationwide. Our national network of 55 bottlers and 27 distributors utilize our MIS tools and processes to optimize their production and distribution assets while servicing our retail customers. We believe the combination of our major retail relationships, unique single-vendor solution for retail customers, national network of independent bottlers and distributors and our MIS tools is difficult to replicate. We anticipate these factors will facilitate our introduction of new purified water-related products in the future.

35.    The IPO Registration Statement discussed the Company's strategy to increase penetration with existing retail relationships and develop new relationships, and stated, in pertinent part, as follows:

We believe we have significant opportunities to increase store penetration with our existing retail relationships. As of June 30, 2010, our water bottle exchange service was offered at 5,600 of our top ten retailers' nationwide locations. Such retailers present us an opportunity of approximately 13,900 additional nationwide locations.

36.    The IPO Registration Statement discussed the Company's strong retail relationships and stated, in pertinent part, as follows:

Retailer Relationships

We target major retailers with either a national footprint or a significant regional concentration. Our relationships are diversified among the following retail categories and major accounts:

- 10 -

| Retail Category | Major Accounts |
| --- | --- |
| Home Centers / Hardware Stores | Lowe's Home Improvement, Ace Hardware, True Value |
| Mass Merchants | Walmart, Target, Kmart |
| Grocery Stores | Kroger, Albertsons, Food Lion |
| Membership Warehouses | Sam's Club, Costco |
| Drug Stores | Walgreens, CVS |

In addition to the retail categories listed above, we anticipate entering the office retail category in the fourth quarter of 2010.

Retailer Opportunity

We offer retailers a single-vendor solution. Our water bottle exchange service provides retailers with a year-round consumer product and an opportunity to increase sales and profits with minimal labor and financial investment. Through our national network, we are able to service major retailers nationwide. Retailers benefit from our water bottle exchange service that offers high margin and generates productivity from often underutilized interior and exterior retail space. In addition, our water bottle exchange service has the potential to increase retailers' sales of ancillary products through increased traffic from repeat water bottle exchange consumers, who we believe purchase an average of 35 water bottles annually.

37. The IPO Registration Statement discussed the efficient and hands-on management of the Company's customers and business through its management information system, and stated, in pertinent part, as follows:

We have made a substantial investment in MIS tools which enhance our ability to process orders, manage inventory and accounts receivable, maintain distributor and customer information, maintain cost-efficient operations and assist distributors in delivering products and services on a timely basis. Our technology utilizes highly integrated, scalable software applications that cost-effectively support our growing retail network. Our MIS tools also allow us to analyze historical trends and data to further enhance the execution, service and identification of new markets and marketing opportunities.

38. On December 2, 2010, Primo Water issued a press release announcing its financial results for the third quarter of 2010, the period ended September 30, 2010. For the quarter, the Company reported that it added "700 Exchange locations [] (including the first Walmart locations) bringing total Exchange locations to 7,900" and that it "[b]egan shipping next-generation water

dispenser products to retailers." The Company reported that net sales decreased 25.3% to $10.9 million compared to $14.6 million in the third quarter of 2009 and attributed the decline to a "reduction in retailers' inventories of Primo's water dispensers in anticipation of new lower-priced Primo water dispenser models." Defendant Prim commented on the results, stating, in pertinent part, as follows:

> We are very satisfied with the results of our IPO, which allowed us to complete the acquisition of the Culligan Refill Business, strengthen our balance sheet, and have access to capital to execute our growth plan. During the third quarter, we delivered excellent results on key financial performance metrics in our Exchange business, including record revenue, location growth, and an increase in same-store unit sales. However, we did see a significant sales decline in our Product business, which we anticipated, as retailers continued to reduce their inventories of our water dispensers to make room for our new product line. Nevertheless, we continue to see positive trends in consumer sell-through of our dispensers, reflected in the 15% year-to-date sales increase over the same period last year. We successfully launched and began shipping our new products in the fourth quarter. Our new dispenser line will offer consumers an improved product at a lower price, which we believe will positively impact Primo's growth as our more affordable dispensers reach additional households.

39.    On March 24, 2011, Primo Water issued a press release announcing its financial results for the fourth quarter and full year of 2010, the period ended December 31, 2010. For the fourth quarter, the Company reported that net sales increased 61% to $12.7 million from $7.9 million in the fourth quarter of 2009. Defendant Prim commented on the results, stating, in pertinent part, as follows:

> We are pleased to report that Primo Water achieved record results for the fourth quarter of 2010 as we continue our mission of providing great tasting purified water in an environmentally responsible way. We are on track with our refill acquisition integration efforts and expect to achieve synergy savings over the course of 2011. We are very encouraged with the rate that consumers continue to add water dispensers to their homes. Our retailers sold over 230,000 dispenser units ("razors") to consumers in 2010, which we expect to lead to continued growth in our higher margin water sales ("razorblades").

40.     In the press release, the Company also provided financial guidance for the full year of 2011, and stated, in pertinent part, as follows:

> For 2011, the Company continues to expect sales to increase 260% to 275%, or in the range of $116 to $123 million, which includes the impact of the previously announced acquisitions.  Primo expects to end the year with between 18,700 to 19,700 retail locations, which is the result of adding between 5,700 to 6,700 retail locations for the year.  The Company also expects to achieve full year 2011 GAAP earnings per diluted share of $0.06 to $0.15, non-GAAP pro forma fully-taxed earnings per diluted share of $0.16 to $0.24, GAAP income from operations in the range of $5.3 to $7.5 million and Non-GAAP pro forma EBITDA in the range of $16.5 to $19.5 million.

41.     On May 10, 2011, Primo Water issued a press release announcing its financial results for the first quarter of 2011, the period ended March 31, 2011.  For the quarter, the Company reported that net sales increased 94% to $17.1 million from $8.8 million in the first quarter of 2010, and highlighted that the numbers were "ahead of the Company's prior net sales guidance of $15.9 to $16.3 million."   The Company also reported first quarter 2011 GAAP EPS of ($0.11) and non-GAAP *pro forma* fully-taxed EPS of breakeven, which was "in-line with Company guidance," and that the Company had a "[r]ecord number of installations, resulting in 14,600 locations for the Water segment."  Defendant Prim commented on the results, stating, in pertinent part, as follows:

> We accomplished significant milestones in the first quarter including the addition of a record number of new locations, two acquisitions and progress on the integration of our Refill Business acquisition. I am very proud of our organization and our ability to deliver strong growth in the quarter as we execute on our long-term strategic goals. We further strengthened our position for many years of profitable growth.

42.     In the press release, the Company also provided financial guidance for the second quarter and full year of 2011, and stated, in pertinent part, as follows:

> The Company expects total sales in the second quarter of 2011 to double compared to the second quarter of 2010, or result in the range of $24.0 to $25.5 million.  The Company expects to end the second quarter of 2011 with between 15,600 and 16,100 retail locations for its Water segment. ***The Company expects to achieve second quarter GAAP earnings (loss) per diluted share in the range of ($0.03) to $0.02, non-GAAP pro forma fully-taxed earnings per diluted share of $0.04 to $0.08,***

- 13 -

*GAAP operating income of breakeven to $1.2 million and non-GAAP adjusted EBITDA in the range of $3.7 to $4.7 million*.

For 2011, the Company continues to expect sales to increase 260% to 275% compared to 2010, or in the range of $116 to $123 million, which includes the impact of acquisitions. Primo expects to end the year with between 18,700 and 19,700 retail locations for its Water segment. ***The Company also expects to achieve full year 2011 GAAP earnings per diluted share of $0.06 to $0.15, non-GAAP pro forma fully-taxed earnings per diluted share of $0.16 to $0.24, GAAP income from operations in the range of $5.0 to $7.3 million and non-GAAP adjusted EBITDA in the range of $16.5 to $19.5 million.***

[Emphasis added.]

43.     On May 10, 2011, Primo Water held a conference call with analysts and investors to discuss the earnings announcement and the Company's operations. During the call, Defendant Prim spoke positively about the Company's business and growth prospects, and stated, in pertinent part, the following:

On today's call, a key take-away I would like you to remember as we review our financial results is that Primo Water continues to be extremely well-positioned for location expansion and increased profitability, as we focus on the execution of our long-term strategic plan.

*       *       *

We ended the first quarter with a record number of installs to end the quarter with 14,600 retail locations in our Water segment. As a result, I'm pleased to say our base exchange services is in better position at this point than we planned. This is due to having higher quality accounts at this point in time.

44.     The Company priced the June 2011 Offering on June 17, 2011, at which time the Prospectus for that offering became effective. The June 2011 Offering Registration Statement, including the June 2011 Prospectus, described the Company's business, and stated, in pertinent part, as follows:

We are a rapidly growing provider of multi-gallon purified bottled water, self-serve filtered drinking water, and water dispensers sold through major retailers in the United States and Canada.

*       *       *

- 14 -

As of March 31, 2011, our exchange and refill services were offered in each of the contiguous United States and in Canada at approximately 14,600 combined retail locations, including Lowe's Home Improvement, Walmart, Kroger, Safeway, Albertsons, Winn-Dixie, H-E-B Grocery and Walgreens.

We provide major retailers throughout the United States and Canada with single-vendor solutions for water bottle exchange and refill vending services, addressing a market demand that we believe was previously unmet.

45.     The June 2011 Offering Registration Statement contained other statements about the Company's business that were similar to those contained in the IPO Registration Statement.

46.     The statements referenced above in ¶¶33-45 were each inaccurate statements of material fact or were materially false and misleading when made because they failed to disclose and misrepresented the following material adverse facts, which were known to Defendants or recklessly or negligently disregarded by them:

(a)     Neither demand nor sales of the Company's products were as robust as represented;

(b)     Stores owned by the Company's largest retail customers did not carry the Company's products so the Company was not generating any revenue from those locations;

(c)     The Company's growth and business prospects were heavily dependent upon the ability of the Company's two largest customers to sell products from other, unrelated companies before those customers would order products from Primo Water;

(d)     The Company's primary retail customers would not be in position to order any of the Company's products until after those retail customers cleared out other inventory sitting on their shelves, including inventory related to products sold by competitors to the Company;

(e)     The Company's largest retail customers had delayed promotions of the Company's products, which negatively impacted the Company's sales;

(f)     The Company's growth rate had slowed and would be slower for the rest of 2011, if not beyond;

(g)     The Company would not meet the financial guidance it provided to investors; and

(h)     As a result of the foregoing, Defendants' positive statements about the Company were lacking in a reasonable basis of fact and were materially false and misleading when made.

47.     Furthermore, registrants are required to provide the information required by Item 303 of Regulation S-K [17 C.F.R. §229.303], including any known trends, events or uncertainties that have caused or are reasonably likely to cause the registrant's financial information not to be indicative of future operating results.  Additionally, the Registration Statements were required to furnish the information pursuant to Item 503 of Regulation S-K [17 C.F.R. §229.303], including, among other things, a "discussion of the most significant factors that make the offering risky or speculative."   Under applicable SEC rules and regulations governing the preparation of the Registration Statements and Prospectuses, the IPO Registration Statement and the June 2011 Offering Registration Statement were required to disclose the facts referenced in ¶46.  The IPO Registration Statement and the June 2011 Offering Registration Statement failed to contain any such disclosures.

48.     On August 10, 2011, before the stock market opened, the Company issued a press release announcing its financial results for the second quarter of 2011, the period ended June 30, 2011.  For the quarter, the Company reported a net loss of $2.0 million or loss of $0.10 per share, compared to Company's projections in May 2011 of earnings ranging from a loss of $0.03 to a gain of $0.02 per share and analyst projections of a gain of $0.07 per share.  The Company also revised

downward its financial projections for the third and fourth quarters of 2011 and provided guidance for the full year of 2012.  The press release stated, in pertinent part, as follows:

> While the Company's net sales for the second quarter increased more than 70% over the prior year, results were below previous guidance primarily due to lower water dispenser and corresponding water sales.  Prim noted, "Two of our major retailers were scheduled to launch a national water and dispenser promotions during the second quarter; however; due to their inventory constraints and other circumstances beyond our control, neither were completed in the second quarter as we expected. The positive news is that both retailers are committed to the program and have started rolling out the national promotion of water and dispensers in the third quarter."  The Company expects these major mass retail partners to continue to roll out the national promotion during the remainder of the third quarter and in the fourth quarter of 2011.

*       *       *

Updated Guidance

The Company has updated its guidance to reflect the launch of the new carbonating appliances as well as the change in the national promotion and rollout schedules of certain major retailer partners.

| | Q3 | Q4 | Full Year 2012 |
|---|---|---|---|
| Locations (in thousands) | 17.0 to 17.5 | 18.7 to 19.7 | 23.7 to 25.7 |
| Sales ($ in millions) | 24.0 to 26.0 | 27.0 to 29.5 | 177.0 to 187.0 |
| GAAP EPS | ($0.11) to ($0.16) | ($0.21) to ($0.15) | $0.82 to $0.96 |
| Pro forma EPS | ($0.06) to ($0.03) | ($0.09) to ($0.05) | $0.63 to $0.72 |

The adjustments from the GAAP to non-GAAP measures consist of adjustments related to preferred dividends, provision for income taxes, non-cash stock-based compensation, non-recurring acquisition-related costs, amortization of intangible assets, pro forma effect of expected acquisition synergies and the impact of applying full income tax rates.

Mr. Prim concluded, "We have made adjustments in our financial guidance to reflect changes in the timing of water dispenser promotions at our largest retailers.  We continue to be in great position for strong long-term revenue and earnings growth as we take advantage of the increasing consumer preference to make great tasting beverages from Primo purified water in their home and office.  We expect to increase the number of households that enjoy a Primo appliance and the related consumables as we continue to add retail locations with the right product mix and capitalize on the growing healthy, sustainable and value-conscious consumer lifestyle trends.

49.     The Company also held a conference call on August 10, 2011 and provided additional details about the information contained in the earnings release.

50.     Following the Company's announcements on August 10, 2011, the price of Primo Water common stock collapsed from $13.92 per share on August 9, 2011 to close at $5.40 per share on August 10, 2011 – a one day decline of $8.52 per share, or 61% – on extremely heavy volume.

51.     After the market closed on August 10, 2011, additional undisclosed negative information was revealed about the Company. On that date, an analyst from Stifel Nicholas issued a research report and downgraded Primo Water stock from a buy to a hold. Following the disclosure of negative information about the Company after the close of the market on August 10, 2011, the price of Primo Water common stock declined from $5.40 per share that day to close at $5.12 per share on August 11, 2011 – a one day decline of $5.20% – on extremely heavy volume. Primo Water stock continued to decline over the next several days and closed at $4.06 per share on August 18, 2011.

## COUNT I

### Violations of Section 11 of the Securities Act
### Against Primo Water, the Primo Water Individual Defendants,
### and the Underwriter Defendants

52.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

53.     This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, and is asserted against Primo Water, the Primo Water Individual Defendants, and the Underwriter Defendants.

54.     The Registration Statements for the IPO and the June 2011 Offering were inaccurate and misleading, contained untrue statements of material facts, omitted facts necessary to make the

- 18 -

statements made therein not misleading, and omitted to state material facts required to be stated therein.

55.     Primo Water is the registrant for the Offerings.  As issuer of the shares, Primo Water is strictly liable for the materially inaccurate statements contained in the Registration Statements and the Prospectuses and the failure of the Registration Statements and Prospectuses to be complete and accurate.

56.     The Primo Water Individual Defendants each signed the Registration Statements either personally or through an Attorney-in-Fact and/or caused their issuance.  The Primo Water Individual Defendants each had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Registration Statements.  They had a duty to ensure that such statements were true and accurate, that there were no omissions of material fact that would make the statements misleading and that the documents contained all facts required to be stated therein.  In the exercise of reasonable care, the Primo Water Individual Defendants should have known of the material misstatements and omissions contained in the Registration Statements and also should have known of the omissions of material fact that were necessary to make the statements made therein not misleading.  As such, the Primo Water Individual Defendants are liable to Plaintiff and the Class.

57.     The Underwriter Defendants were each underwriters, as that term is used in Section 11(a)(5) of the Securities Act, with respect to the Offerings and the Company's common stock sold through the Registration Statements.  The Underwriter Defendants were required to investigate with due diligence the representations contained therein to confirm that they did not contain materially misleading statements or omit material facts.  None of the Underwriter Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements described

herein, which were contained in the Registration Statements and Prospectuses, were true, were without omission of any material facts, and/or were not misleading.

58.　　By reasons of the conduct herein alleged, Primo Water, the Primo Water Individual Defendants and the Underwriter Defendants violated Section 11 of the Securities Act.

59.　　Plaintiff and putative Class members acquired Primo Water common stock in the Offerings, and in reliance on the Registration Statements and without knowledge of the untruths and/or omissions alleged herein.　Plaintiff and the Class sustained damages when the price of Primo Water common stock declined substantially subsequent to and due to Defendants' violations.

## COUNT II

### Violations of Section 12(a)(2) of the Securities Act
### Against All Defendants

60.　　Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

61.　　This Count is brought pursuant to Section 12(a)(2) of the Securities Act, 15 U.S.C. §77l, on behalf of Plaintiff and the Class, against all Defendants.

62.　　Defendants were sellers and offerors and/or solicitors of purchasers of the common stock offered pursuant to the IPO Prospectus and the June 2011 Offering Prospectus.　Defendants issued, caused to be issued, and/or signed the Registration Statements issued in connection with the IPO and the June 2011 Offering.　The Registration Statements each contained a Prospectus, which was used to induce investors, such as Plaintiff and the other members of the Class, to purchase Primo Water common stock.

63.　　The Prospectuses contained untrue statements of material fact, omitted to state other facts necessary to make the statements made not misleading, and omitted material facts required to be stated therein.　The Primo Water Individual Defendants' actions of solicitation included

- 20 -

participating in the preparation of the false and misleading Prospectuses and in "Road Shows" to promote the Offerings. Defendants, individually and/or acting through their employees, agents and others, solicited such purchases for their personal financial gain through the preparation and dissemination of the Prospectuses. Additionally, the Selling Shareholder Defendants sold millions of shares in the June 2011 Offering.

64.     The Underwriter Defendants participated in the preparation and dissemination of the false and misleading Prospectuses for their own financial benefit. But for their participation in the Offerings, including their solicitation as set forth herein, those Offerings could not and would not have been accomplished. Specifically, the Underwriter Defendants:

(a)     Made the decision to conduct the Offerings and at the price set forth in the offering documents. The Underwriter Defendants drafted, revised and/or approved the Prospectuses. The Prospectuses were calculated to create interest in Primo Water common stock and were widely distributed by or on behalf of these Defendants for that purpose;

(b)     Finalized the Prospectuses and caused them to become effective; and

(c)     Conceived and planned the Offerings and orchestrated all activities necessary to affect the sale of the common stock to the investing public, by issuing common stock, promoting the common stock and supervising their distribution and ultimate sale to the investing public.

65.     As set forth more specifically above, the Prospectuses contained untrue statements of material fact and omitted to state material facts necessary in order to make the statements, in light of the circumstances under which they were made, not misleading.

66.     Plaintiff and the other Class members did not know, nor could they have known, of the untruths or omissions contained in the Prospectuses.

67.     The Defendants named in this Count were obligated to make a reasonable and diligent investigation of the statements contained in the Prospectuses to ensure that such statements were true and that there was no omission of material fact required to be stated in order to make the statements contained therein not misleading.  None of the Defendants named in this Count made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Prospectuses were accurate and complete in all material respects.  Had they done so, these Defendants would have known of the material misstatements and omissions alleged herein.

68.     By reason of the conduct alleged herein, these Defendants violated Section 12(a)(2) of the Securities Act.  Accordingly, Plaintiff and members of the Class who hold Primo Water common stock purchased in the Offerings have the right to rescind and recover the consideration paid for their Primo Water common stock and hereby elect to rescind and tender their Primo Water common stock to the Defendants sued herein.  Plaintiff and Class members who have sold their Primo Water common stock are entitled to rescissory damages.

## COUNT III

### Violation of Section 15 of the Securities Act
### Against the Primo Water Individual Defendants

69.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

70.     This Count is brought pursuant to Section 15 of the Securities Act against the Primo Water Individual Defendants.

71.     Each of the Primo Water Individual Defendants acted as a controlling person of Primo Water within the meaning of Section 15 of the Securities Act by virtue of his position as a director and/or senior officer of Primo Water.  By reason of their senior management positions and/or directorships at the Company, as alleged above, these Individual Defendants, individually and

- 22 -

acting pursuant to a common plan, had the power to influence and exercised the same to cause Primo Water to engage in the conduct complained of herein. By reason of such conduct, the Primo Water Individual Defendants are liable pursuant to Section 15 of the Securities Act.

72.     Each of the Primo Water Individual Defendants was a culpable participant in the violations of Sections 11 and 12(a)(2) of the Securities Act alleged in Counts I and II above, based on their having signed the Registration Statements and/or having otherwise participated in the process which allowed the Offerings to be successfully completed.

**COUNT IV**

**Violation of Section 10(b) of the Exchange Act
and Rule 10b-5 Promulgated Thereunder
Against Primo Water, Prim, Castaneda, and Mills**

73.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

74.     This Count is alleged against Defendants Primo Water, Prim, Castaneda, and Mills (collectively, the "Count IV Defendants").

75.     During the Class Period, the Count IV Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

76.     The Count IV Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they:

> (a)     Employed devices, schemes, and artifices to defraud;

- 23 -

(b)     Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)     Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of Primo Water common stock during the Class Period.

77.     As alleged herein, the Count IV Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Count IV Defendants, by virtue of their receipt of information reflecting the true facts regarding Primo Water, their control over, and/or receipt and/or modification of Primo Water's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Primo Water, participated in the fraudulent scheme alleged herein.

78.     Defendants, through the Offerings, sold more than $100 million of Primo Water shares to unsuspecting investors, and used cash raised from the Offerings and the Company's artificially inflated common stock to make acquisitions, while in possession of material non-public information as described herein.

79.     At all relevant times, the market for Primo Water common stock was an efficient market for the following reasons, among others:

- 24 -

(a)     Primo Water common stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Primo Water filed periodic public reports with the SEC and the NASDAQ;

(c)     Primo Water regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     Primo Water was followed by several common stock analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

80.     As a result of the foregoing, the market for Primo Water common stock promptly digested current information regarding Primo Water from all publicly available sources and reflected such information in the price of Primo Water common stock.  Under these circumstances, all purchasers of Primo Water common stock during the Class Period suffered similar injury through their purchase of Primo Water common stock at artificially inflated prices and a presumption of reliance applies.

81.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially

from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, the Count IV Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Primo Water who knew that those statements were false when made.

82.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Primo Water common stock.  Plaintiff and the Class would not have purchased Primo Water common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

83.     As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Primo Water common stock during the Class Period.

## COUNT V

### Violation of Section 20(a) of the Exchange Act
### Against Defendants Prim, Castaneda and Mills

84.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

85.     Defendants Prim, Castaneda and Mills (collectively, the "Count V Defendants") acted as controlling persons of Primo Water within the meaning of Section 20(a) of the Exchange Act.  By reason of their positions as officers and/or directors of Primo Water, and their ownership of Primo Water common stock, the Count V Defendants had the power and authority to cause Primo Water to

engage in the wrongful conduct complained of herein. Primo Water controlled each of the Count V Defendants and all of its employees. By reason of such conduct, the Count V Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of itself and the Class, prays for judgment as follows:

A.      Declaring this action to be a class action properly maintained pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure;

B.      Awarding Plaintiff and other members of the Class damages together with interest thereon;

C.      With respect to Count II, Ordering that the Offerings be rescinded;

D.      Awarding Plaintiff and other members of the Class their costs and expenses of this litigation, including reasonable attorneys' fees, accountants' fees and experts' fees and other costs and disbursements; and

E.      Awarding Plaintiff and other members of the Class such other and further relief as may be just and proper under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  December 2, 2011                    McDANIEL & ANDERSON, L.L.P.
                                                              L. BRUCE McDANIEL (NC State Bar No. 5025)


                                                              _____
                                                              */s/ L. Bruce McDaniel*
                                                              L. BRUCE McDANIEL

                                                              P.O. Box 58186
                                                              Raleigh, NC  27658
                                                              Telephone:  919/872-3000
                                                              919/790-9273 (fax)
                                                              mcdas@mcdas.com

- 27 -

ROBBINS GELLER RUDMAN
   & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
EVAN J. KAUFMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
ekaufman@rgrdlaw.com

*Attorneys for Plaintiff*